■ HENRY J.W. VANDERMINDEN, III, et al., Respondents-Appellants, v ROBERT D. VANDERMINDEN, SR., Individually and as Coexecutor of HENRY J.W. VANDERMINDEN, JR., Deceased, et al., Appellants-Respondents. [641 NYS2d 732] —Spain, J. (1) Cross appeals from an order of the Supreme Court (Viscardi, J.), entered March 8, 1995 in Washington County, which granted plaintiffs' motion for a preliminary injunction and partially granted defendants' cross motion to dismiss the complaint, and (2) appeal from an order of said court, entered August 8, 1995 in Washington County, which, upon renewal, adhered to its prior decision.

On September 26, 1988, plaintiff Henry J.W. Vanderminden, III (hereinafter plaintiff) and his brother, defendant Robert D. Vanderminden, Sr. (hereinafter defendant), executed an agreement consisting, *inter alia,* of an understanding that they, together with their respective families, owned an equal amount of voting stock in the family business, Telescope Casual Furniture, Inc. (hereinafter the company). The brothers, who had been at odds over the control and management of the company, essentially agreed to preserve the status quo of equal ownership and control. The agreement was also executed by Henry J.W. Vanderminden, Jr., their father, who agreed not to transfer "by gift, [w]ill, sale or in any respect any voting stock of [the company] to either of my sons or any member of their

family * * * which will give one family more stock than the other" and, further, not to take any action which would favor one side of the family over the other.

At that point in time, Cecile Vanderminden, the father's wife and mother of plaintiff and defendant, owned 52 shares of voting stock. Shortly thereafter, another agreement was drawn allegedly to supplement the original agreement, which recognized that the mother was not a party to the original agreement and which provided that, if the mother transferred, by will or otherwise during her lifetime, more voting stock to one side of the family than to the other, appropriate action would be taken so that neither side of the family would own more voting stock than the other. Although defendant signed this proposed supplemental agreement, plaintiff did not sign it. Notably, in April 1987, a durable power of attorney was executed by the mother, appointing the father as her attorney-in-fact, which permitted the father, *inter alia*, to conduct share and commodity transactions.

Thereafter, in July 1989, all of the shareholders of the company executed an irrevocable voting trust and pooling agreement, providing that all the shares of stock be pooled together for a period of five years and that plaintiff and defendant be covoting trustees who must agree in order to cast a vote. In September 1989, the father, as the mother's attorney-in-fact via the power of attorney, transferred the mother's 52 shares of voting stock to defendant Katherine V. Rathbun, defendant's daughter; the transfer was made subject to the July 1989 voting trust agreement.

In July 1994, at the time the voting trust agreement was about to expire, plaintiffs commenced this action by order to show cause and, having been granted a temporary restraining order, sought a preliminary injunction enjoining defendants from acting inconsistent with the voting trust agreement during the pendency of the action. The underlying action, in pertinent part, alleged that defendants breached the September 1988 agreement by inducing the father, as attorney-in-fact, to turn over the mother's stock to Rathbun, thereby giving defendant's family controlling interest in the company, and further, that if defendants were not enjoined during the pendency of the litigation from voting their shares to plaintiffs' detriment, plaintiffs will be irreparably injured.

Defendants, by cross motion, sought an order pursuant to CPLR 3211 (a) (1) dismissing plaintiffs' second cause of action, an order pursuant to CPLR 3211 (a) (5) dismissing the seventh cause of action, and an order pursuant to CPLR 3211 (a) (7)

dismissing the first, second, third, fourth, fifth, sixth and eighth causes of action. They also sought denial of plaintiffs' motion for a preliminary injunction. Supreme Court granted plaintiffs a preliminary injunction enjoining defendants from acting inconsistent with the voting trust agreement and, further, enjoining defendants from transferring any shares during the pendency of the action. In addition, Supreme Court dismissed plaintiffs' fourth, sixth, seventh and eighth causes of action. Defendants appeal from said order. Plaintiffs cross-appeal from the order insofar as Supreme Court dismissed the fourth and seventh causes of action. Defendants then moved to renew their motion to dismiss the entire matter. Supreme Court granted renewal but adhered to its original decision and order, and defendants appeal from that order as well.

Initially, with respect to the first, second and third causes of action, we reject defendants' contention that they should have been dismissed based on the documentary evidence submitted (*see*, CPLR 3211 [a] [1]).[1] To dismiss a cause of action based on CPLR 3211 (a) (1), defendants must show that "the documentary evidence that forms the basis of [this] defense must be such that it resolves all the factual issues as a matter of law and conclusively and definitively disposes of the plaintiff's claim" (*Fernandez v Cigna Prop. & Cas. Ins. Co.*, 188 AD2d 700, 702; *see*, *Lake Placid Vil. v Lake Placid Main St. Corp.*, 90 AD2d 873, 874). Here, defendants contend that the wording of the September 1988 agreement and the proposed supplemental agreement, which plaintiff did not execute, show that the transfer of the voting stock was not in violation of the original agreement since the transfer, in effect, was made by the mother. However, a legitimate question exists as to whether the transfer, which was made by the father as the mother's attorney-in-fact, was made by the father or by the mother.

If the transfer is considered to have been made by the father, it is likely that the agreement was violated, but if the transfer is considered to have been made by the mother, it is likely that the agreement was not violated. This factual issue is key to determining whether defendants violated the September 1988 agreement as alleged in the first cause of action, or whether the father breached the contract, as alleged in the second cause

---

1. We also reject defendants' assertion that the first cause of action should be dismissed because it failed to allege specific facts of undue influence. Plaintiffs need not prove their factual allegations on a motion to dismiss since they are entitled to "every possible favorable inference * * * that plaintiff[s] * * * will ultimately prevail on the merits" (*Rovello v Orofino Realty Co.*, 40 NY2d 633, 634).

of action. Moreover, if the power of attorney gave the father the authority to substitute his judgment for that of the mother, it may be that he limited that authority when he entered into the September 1988 agreement when it came to acting in the mother's behalf with respect to matters involving the balance of ownership of the company. Accordingly, the first and second causes of action were properly sustained. The third cause of action, seeking specific performance, is premised on a favorable outcome of the first two causes of action and, as such, the same factual resolutions which were necessary for those determinations exist here and, therefore, cannot be dismissed based on the documentary evidence.

It is alleged in plaintiffs' fifth cause of action that defendants did not comply with a July 1989 letter agreement by, *inter alia*, failing to provide raises and causing certain plaintiffs to leave the employment of the company. We reject defendants' argument that this cause of action should be dismissed because it should be addressed to the company and not to the individual defendants, since it was ultimately the company which was responsible for the actions about which plaintiffs are complaining. As plaintiffs point out, the company was not a party to the agreement; rather, it was plaintiffs and defendants, as shareholders, who made the agreement. Accordingly, since the shareholders of the closely held corporation signed the agreement, the terms of the agreement will be enforced despite the fact that the corporation is not a named party (*see, Matter of Lane [Abel-Bey]*, 70 AD2d 838, 839, *affd* 50 NY2d 864; *Siegel v Ribak*, 43 Misc 2d 7, 13).

Moving next to defendants' contention that Supreme Court improperly granted a preliminary injunction to plaintiffs, it is well settled that in order to be granted preliminary injunctive relief, plaintiffs must show "a probability of success, danger of irreparable injury in the absence of an injunction, and a balance of the equities in their favor" (*Aetna Ins. Co. v Capasso*, 75 NY2d 860, 862; *see, Doe v Axelrod*, 73 NY2d 748, 750; *Kensington Ct. Assocs. v Gullo*, 180 AD2d 888, 889). Furthermore, the granting of a preliminary injunction will not be disturbed on review absent an abuse of discretion (*see, Jarvis Assocs. v Stotler*, 216 AD2d 649, 651; *GTE Spacenet Corp. v New York State Dept. of Taxation & Fin.*, 201 AD2d 429, 430). In applying the three-pronged test, we conclude that Supreme Court properly granted a preliminary injunction.

As part of their submitted proof, plaintiffs included the September 1988 agreement which established that the father would not favor plaintiff's family over defendant's family, or

vice versa, by transferring the controlling stock to either family. Also presented in the documentary evidence was the power of attorney executed by the mother appointing the father as attorney-in-fact. Defendants assert that the transfer of the mother's stock through the father as attorney-in-fact was no more than a transfer by the mother and that, since she was not part of the September 1988 agreement, she was not bound by its terms. Notwithstanding this fact, the executed agreement bound the father not to transfer any of the stock "by gift, [w]ill, sale *or in any respect*" (emphasis supplied). We agree with Supreme Court's conclusion, for the purpose of determining the propriety of the issuance of the preliminary injunction, that this language may apply to transfers by the father within his authority as an attorney-in-fact. Furthermore, the mother died in 1990 and plaintiffs allege that, as revealed by her will, her intent was to treat her two children equally by placing the 52 shares in trust with the father for life and, at his death, they were to be divided in equal shares to plaintiff and defendant. Thus, as viewed by Supreme Court, the father's transfer of the stock via the power of attorney can be viewed as contrary to the intent of the principal. Accordingly, Supreme Court did not improvidently abuse its discretion in finding that plaintiffs would likely succeed on the merits of their surviving causes of action.

Defendants further contend that plaintiffs have not shown that they will suffer irreparable harm which would entitle them to a preliminary injunction. They argue that most of plaintiffs' claims in their complaint seek money damages as relief and that entitlement to money damages is not a harm which is irreparable (*see, e.g., Busters Cleaning Corp. v Frati*, 180 AD2d 705, 706). Plaintiffs, however, aver in their affidavits that they will suffer more than monetary harm. Their alleged harm, an opportunity for defendants to shift the balance power and assume management and control of the company, may properly be viewed as irreparable injury (*see, e.g., Matter of Brenner v Hart Sys.*, 114 AD2d 363, 366). Moreover, under the circumstances of this case, plaintiffs' request to maintain the status quo by continuing to enforce the existing voting trust agreement through the pendency of the action is proper even if the injury were purely monetary (*see, e.g., Young & Co. v Black*, 97 AD2d 369, 370, *appeal dismissed* 61 NY2d 712). In our view, the irreparable injury prong has been satisfied.

We also reject defendants' assertion that the balancing of the equities tips in their favor rather than in favor of plaintiffs. They argue that plaintiff, by not signing the supplemental

agreement, should be precluded from this action which could have been commenced earlier when the shares were originally transferred. First, it appears that the action was not commenced until years after the shares were transferred because the voting trust agreement, which kept the power of the company equalized between plaintiffs and defendants, was about to expire. Second, simply because the action could have been commenced earlier does not establish any inequity on defendants' part. Rather, it is likely that if defendants are ultimately successful, they would lose nothing as a result of the preliminary injunction which has the purpose of maintaining the status quo. On the other hand, if plaintiffs ultimately succeed and were not given the benefit of the preliminary injunction, they are likely, during the pendency of this action, to lose control and ownership of the company. Accordingly, a balance of the equities weighs in favor of plaintiffs (*see*, *Burmax Co. v B & S Indus.*, 135 AD2d 599, 601; *Kurtz v Zion*, 61 AD2d 778, 779).

We also reject defendants' contention that Supreme Court's decision is incompatible with the mother's durable power of attorney, which by its terms authorized the father to transfer the stock in question. Defendants argue that since the September 1988 agreement was not binding on the mother, and since plaintiff did not sign the supplemental agreement, the mother was able to do with the stock what she pleased. Further, they argue that the father, as her attorney-in-fact, was authorized to carry out actions on behalf of the mother and that the father's transfer was really a transfer on behalf of the mother since, as an agent under the power of attorney he was her alter ego and thus nothing was breached. While it is true that as the mother's attorney-in-fact the father was authorized to sell the 52 shares of stock at issue, he also had the authority *not* to sell those shares. Nothing in the power of attorney agreement mandated him to transfer them exclusively to defendant's family. He merely was given the discretionary authority and, in exercising his discretion in the manner described, may have violated the September 1988 agreement by making a transfer which disturbs the equality of the ownership of the company.

Moving now to plaintiffs' contentions, their assertion that Supreme Court improperly dismissed their fourth cause of action is without merit. Plaintiffs' fourth cause of action alleges that "[t]he transfer of shares aforesaid from [the mother] by her attorney-in-fact [the father] to [Rathbun], was a transfer for inadequate consideration". Supreme Court dismissed this

cause of action reasoning that "there were no claims against the Estate of [the mother] as to the transfer of shares being for inadequate consideration". Here, plaintiffs postulate the theory that the claim is not against the mother, but against the father's estate for breaching the fiduciary duty he owed to the mother as her attorney-in-fact. Plaintiffs, however, have no standing to assert a claim on behalf of the mother; only the mother's representatives may bring such a claim. Accordingly, Supreme Court did not abuse its discretion by dismissing plaintiffs' fourth cause of action.

On the other hand, plaintiffs' contention that the dismissal of its seventh cause of action was error has merit. The seventh cause of action alleges tortious interference with contractual rights on the part of Rathbun and Supreme Court dismissed this cause of action as untimely. It is well settled that the appropriate period of limitations for causes of action alleging a tortious interference with contractual relations is three years (*see,* CPLR 214 [4]; *Omega Indus. v Chemical Bank,* 190 AD2d 843, 844-845). Here, the shares were transferred to Rathbun in September 1989. Although plaintiffs commenced this action in July 1994, more than three years after the transfer, the transfer did not immediately effectuate any actual injury to plaintiffs because the voting trust agreement established that power would be equalized for the years that the voting trust was in effect. Therefore, although shares were transferred to Rathbun disturbing the equalization of the shares, it did not have any effect until the expiration of the voting trust. Accordingly, since plaintiffs did not suffer any actual injury until the expiration of the voting trust,[2] that cause of action is timely (*see, Kronos, Inc. v AVX Corp.,* 81 NY2d 90) and was erroneously dismissed.

Cardona, P. J., Mercure, Casey and Yesawich Jr., JJ., concur. Ordered that the order entered March 8, 1995 is modified, on the law, without costs, by reversing so much thereof as granted defendants' motion to dismiss plaintiffs' seventh cause of action; motion regarding said cause of action denied; and, as so modified, affirmed. Ordered that the order entered August 8, 1995 is affirmed, without costs.

---

2. The voting trust agreement is dated July 12, 1989 and expired in five years. The verified complaint was filed in the County Clerk's office on July 12, 1994. The following day, July 13, 1994, Supreme Court signed the order to show cause which included the temporary restraining order which evolved into the preliminary injunction.