Sheldon H. SOLOW d/b/a Solow Building Company, Plaintiff,

v.

Richard Anthony STONE, Michael Anthony Jordan, Christopher John Barlow, and Michael B. Herz, Defendants.

No. 96 Civ. 6963 (MBM).

United States District Court, S.D. New York.

Jan. 29, 1998.

See also, 150 B.R. 9.

**175**

I.

The following facts are accepted as true for purposes of this motion: Plaintiff, doing business as Solow Building Co., owns commercial office space on West 57th Street in Manhattan. (Compl.¶ 4)[1] In August 1989, plaintiff leased the office space for ten years to PPI Enterprises, Inc. ("PPIE"), a Delaware corporation. (*Id.*) PPIE's obligations under the lease were guaranteed by Polly Peck Plc ("Polly Peck"), an English holding company that held 100% of PPIE's stock through PPI Holdings, B.V. ("PPI Holdings"), a wholly owned subsidiary. (*Id.* ¶ 14)

In October 1990, Polly Peck entered into insolvency proceedings in Britain, and the British court appointed Stone, Jordan, and Barlow, British citizens, to serve as the company's "administrators."[2] (*Id.* ¶¶ 9, 14) Shortly after their appointment, the administrators took control of PPIE and decided end its operations and liquidate its assets. (*Id.* ¶ 19) To that end, in January 1991, they travelled to PPIE's offices in New York, where they fired most of PPIE's employees and ordered Herz, a remaining officer at PPIE, to terminate PPIE's lease with plaintiff and abandon the West 57th street office. (*Id.* ¶¶ 20, 22) While in New York, the administrators also rejected a leveraged buy-out proposal from PPIE's management. (*Id.* ¶ 21)

In October 1991, plaintiff sued PPIE in this district for breach of the lease. (*Id.* ¶ 48) In November 1992, the district court granted summary judgment in favor of plaintiff on the issue of liability. *See Solow v. PPI Enterprises (U.S.), Inc.,* 150 B.R. 9, 11 (S.D.N.Y.1992). The administrators and plaintiff then entered lengthy settlement negotiations on the issue of damages. (Compl.¶ 49) These negotiations lasted up to April 1996, at which time PPIE filed for relief under Chapter 11 of the Bankruptcy Code (the "Code"). (*Id.*)

Prior to PPIE's bankruptcy filing, but at a time when PPIE was already insolvent, the

Robert B. Silver, Boies & Schiller, P.C., Armonk, NY, for Plaintiff.

Selvyn Seidel, Latham & Watkins, New York City, for Defendants.

### OPINION & ORDER

MUKASEY, District Judge.

In this diversity action, Sheldon Solow sues Richard Stone, Michael Jordan, Christopher Barlow, and Michael Herz alleging breach of fiduciary duties, aiding and abetting such breaches by another, and tortious interference with contract. Defendants move to dismiss the breach of fiduciary duties claim under Fed.R.Civ.P. 12(b)(1) for lack of standing, and the remaining two claims under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. In the alternative, defendants Stone, Jordan, and Barlow move to dismiss the complaint under Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction. For the reasons stated below, the complaint is dismissed as to all defendants.

---

**1.** References to "Compl." are to the amended complaint filed January 15, 1998.

**2.** Defendants state that a British administrator performs functions akin to those performed by a trustee in bankruptcy in the United States. (Def. Mem. at 5 n. 3)

administrators embarked on a course of conduct intended to use PPIE for Polly Peck's benefit. (*Id.* ¶ 23) In January 1991, they prevented PPI Holding from executing a plan to transfer to PPIE the stock of Standard Fruit & Vegetable, Inc., ("Standard Fruit") a company owned by PPI Holding. (*Id.* ¶ 24) Instead, the administrators arranged for PPI Holding to sell the Standard Fruit stock to a third party and then to use the proceeds to repay a bank loan to PPIE that Polly Peck had guaranteed. (*Id.* ¶ 25) The administrators recorded the repayment as an intercompany "loan" from PPI Holding to PPIE, although they knew that no legitimate lender would have made such a loan at the time. (*Id.* ¶ 26)

Also in furtherance of their plan to use PPIE for Polly Peck's benefit, in July 1992, the administrators arranged for Polly Peck to sell to PPIE its ownership of two percent of the stock of Del Monte Foods Co. ("Del Monte"). (*Id.* ¶ 28) The administrators priced the stock at $12.6 million—the amount Polly Peck had paid for the shares two years earlier—without performing a revaluation study. (*Id.*) Because PPIE did not have funds sufficient to pay this amount, the administrators recorded another intercompany indebtedness, this time between PPIE and Polly Peck. (*Id.*) After the transfer, Herz reduced the balance sheet value of the stock to $3.5 million to reflect its true market value at the time. (*Id.*) However, the $12.6 million intercompany debt remained unchanged. (*Id.*)

In November 1996, after having filed for bankruptcy, PPIE sought the Bankruptcy Court's approval to auction off the Del Monte stock. (*Id.* ¶ 32) PPIE informed the Court that it hoped to receive $1.6 million for the stock, an amount that plaintiff alleges did not reflect the stock's true value but did reflect defendants' unwillingness or inability to maximize the value of PPIE's assets. (*Id.* ¶¶ 32, 38) Plaintiff objected to the auction on the ground that the asking price was too low, the notice and bidding procedures were not designed to insure a competitive bid, and PPIE

unduly favored selling the stock back to Del Monte. (*Id.* ¶ 33) The Bankruptcy Court agreed with plaintiff and ordered PPIE to devise a new plan for conducting the sale. (*Id.* ¶ 36) A court-approved auction eventually was held in January 1997. (*Id.*) Plaintiff, still dissatisfied with the notice and bidding requirements and convinced of PPIE's "adamant" desire to sell the stock to Del Monte for less than its market value, decided to take part in the auction. (*Id.* ¶ 37) Although Del Monte submitted a bid for $10.15 million, well above its original offer (*Id.* 38), plaintiff ultimately prevailed, purchasing the stock for approximately $11 million.[3] (*Id.* ¶ 39)

As a result of the Standard Fruit transaction and the Del Monte stock transfer, PPIE has incurred an intercompany debt to PPI Holding and Polly Peck totalling $54.7 million. (*Id.* ¶ 46) At all times relevant to this action, defendants knew or should have known that PPIE was insolvent and would be unable to pay this debt. (*Id.*) Moreover, as indicated by the stock auction, defendants have been willing to liquidate PPIE's assets without maximizing their market value. (*Id.* ¶ 45) As a result of defendants' overall negligence and mismanagement, plaintiff's ability to collect on its judgment against PPIE for breach of the office lease has been substantially diminished. (*Id.* ¶ 46)

Plaintiff commenced the present action on September 12, 1996, and filed an amended complaint on January 15, 1998. He alleges that defendants, either as *de jure* or *de facto* directors of PPIE, are liable for breach of the fiduciary duties of care and loyalty owed to plaintiff by virtue of his status as creditor of an insolvent company. (*Id.* ¶¶ 50–58) In addition, he alleges that the administrators alone are liable for: (1) aiding and abetting PPIE in breaching the duties of care and loyalty that it owed to plaintiff; and (2) tortiously interfering with plaintiff's rights under the lease with PPIE. (*Id.* ¶¶ 59–72) He seeks over $5 million in compensatory and punitive damages. (*Id.* at pp. 18–19) Defendants move to dismiss, arguing that plaintiff

---

**3.** Parenthetically, it bears mention that plaintiff fared rather well as a result of his purchase of the Del Monte stock from PPIE. Almost immediately after the auction, Del Monte was the target of an unsolicited take-over, and the value of plaintiff's interest in Del Monte tripled to $31 million. (Compl. ¶ 43)

does not have standing to assert a claim against them for breach of fiduciary duties and that the remaining two claims fail as a matter of law. In the alternative, the administrators contend that this court lacks personal jurisdiction over them under Rule 12(b)(2). Because the complaint must be dismissed for lack of standing and for failure to state a claim on which relief can be granted, it is unnecessary to reach the administrators' alternative argument.

## II.

 The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (1994), as the parties are of diverse citizenship[4] and the amount in controversy exceeds the jurisdictional minimum. To determine the substantive law that controls in a diversity action, the court generally applies the choice of law rules of the forum state. *See American Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir.1997). "However, where the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry." *Id.* In this case, the parties agree that, because PPIE was incorporated in Delaware, Delaware law should govern plaintiff's claim that defendants have their breached fiduciary duties of loyalty and care. (Def. Mem. at 12; Pl. Mem. at 14) I agree with the parties. *See Galef v. Alexander*, 615 F.2d 51, 58 (2d Cir. 1980) (under New York choice-of-law rules, law of state of incorporation controls in adjudicating corporation's "internal affairs," including liability of directors and officers); *see also* Restatement (Second) of Conflict of Laws § 309, comment c (1971) (in cases involving directors, there is a presumption in favor of applying law of state of incorporation).

 The same choice-of-law analysis would not seem to apply to plaintiff's remaining claims for aiding and abetting the breach of fiduciary duty and tortious interference with contract. These two claims are not directed against the administrators in their capacity as officers or directors of PPIE, but rather as independent actors. (Compl.¶ 1) Although this theory is at odds with the facts as described in the complaint, see part III.B., *infra*, these two claims raise garden-variety tort issues. In tort cases, New York courts apply the law of the jurisdiction with the greatest interest in the dispute. *See Brink's Ltd. v. South African Airways*, 93 F.3d 1022, 1031 (2d Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 959, 136 L.Ed.2d 845 (1997). In this case, it appears that the acts giving rise to the aiding and abetting and tortious interference claims took place, in significant part, in New York. *See* Compl. ¶ 13 ("the events giving rise to [plaintiff's] claims against defendants occurred in this District"). In any case, it appears that there is no jurisdiction with an interest greater than New York's with respect to these tort claims. Therefore, New York law will govern these claims.

## III.

### A. *Breach of Fiduciary Duties*

Plaintiff's first claim is for breach of the fiduciary duties of care and loyalty that the administrators owed as "*de facto*" directors of PPIE and that Herz owed as a *de jure* officer of the corporation. (*Id.* ¶ 51) The defendants breached these duties, plaintiff argues, by "mismanag[ing] PPIE's affairs," "wast[ing] and mismanag[ing] PPIE's assets," and permitting PPIE to incur a massive debt for the benefit of its parent company, Polly Peck. (*Id.* ¶ 53, 56–57) He argues further that, because PPIE was insolvent, defendants' fiduciary duties extended to plaintiff, who was PPIE's "principal creditor" and is now unable to recover the full value of

---

**4.** Although the original complaint alleged that defendant Herz was a resident of Connecticut (9/12/96 Compl. ¶ 10), the amended complaint alleges that Herz is a resident of New York. (Compl.¶ 8) If this latter allegation is true, there is not complete diversity of citizenship between the parties, because plaintiff is also a resident of New York. However, during a January 9, 1998, telephone conference, plaintiff assured me that, at the time the original complaint was filed, Herz was a domiciliary of Connecticut and not of New York. This assurance, which defendants do not dispute, is sufficient to satisfy the requirement of complete diversity. *See Kubin v. Miller*, 801 F.Supp. 1101, 1110 (S.D.N.Y.1992) (for diversity purposes, citizenship determined at time of filing of original complaint).

his judgment against PPIE. (*Id.* ¶ 52, 54, 56) In response, defendants contend that plaintiff's claims are not personal to him, but rather derive from a general injury to PPIE. (Def. Mem. at 11–18) Accordingly, they argue that the only party with standing to assert this claim is PPIE or its trustee in bankruptcy. I agree.

■ Because defendants frame their standing argument in terms of this court's subject matter jurisdiction (Def. Mem. at 3), I construe the argument as a motion to dismiss under Rule 12(b)(1). *See* Fed.R.Civ.P. 12(b)(1) (dismissal for lack of subject matter jurisdiction); *see also Thompson v. County of Franklin,* 15 F.3d 245, 249 (2d Cir.1994) (recognizing that standing inquiry "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise" (quotations omitted)); *Xerox Corp. v. Genmoora Corp.,* 888 F.2d 345, 350–51 (5th Cir.1989) (derivative suit in which court addresses lack of standing issue under Rule 12(b)(1) rather than Rule 12(b)(6)). In deciding such a motion, a court must accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff. *See Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1092 (2d Cir.1995). Nevertheless, because standing is a jurisdictional matter, the burden is on the plaintiff "clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *Thompson,* 15 F.3d at 249 (quotations omitted); *see also Hirsch v. Arthur Andersen & Co.,* 178 B.R. 40, 42 (D.Conn.1994) (apply Thompson standard to decide whether trustee in bankruptcy had standing to assert claims against debtor's accountant and law firm), *aff'd,* 72 F.3d 1085 (2d Cir.1995).

■ Because PPIE is in bankruptcy, plaintiff has standing only if the breach of fiduciary duty claims are not property of the estate. "Property of the estate does not belong to any individual creditor." *Kalb, Voorhis & Co. v. American Financial Corp.,* 8 F.3d 130, 132 (2d Cir.1993). Whether a claim is property of the estate or of an individual creditor depends on whether the claim is general or particular:

> If the claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action.

*Id.* at 132 (quoting *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.,* 884 F.2d 688, 701 (2d Cir.1989)). This rule is intended to promote the orderly and equitable administration of a bankrupt's estate by preventing individual creditors from pursuing separate actions to the detriment of other creditors and of the estate as a whole. *See PepsiCo,* 884 F.2d at 701. Whether a claim is general, such that it should be brought by a trustee, or particular, such that it belongs to an individual creditor, is a question of state law, in this case Delaware law. *See In re Mediators, Inc.,* 105 F.3d 822, 825 (2d Cir.1997).

Plaintiff contends that, under Delaware law, I should determine whether his claim for breach of fiduciary duties is particular to him by applying the "special injury" test. *See In re Ionosphere Clubs, Inc.,* 17 F.3d 600, 604 (2d Cir.1994) (applying Delaware law). Although it appears that this test has been applied only to actions brought by shareholders, *see e.g., In re Tri–Star Pictures, Inc.,* 634 A.2d 319, 320 (Del.1993), plaintiff argues that it may be employed also to decide claims asserted by a creditor such as himself. *See In re Sunrise Securities,* 916 F.2d 874, 880 (3rd Cir.1990) (noting that "courts have relied on the principles applicable in shareholder suits in deciding whether ... creditors have stated a claim that may be brought individually"). I will assume the applicability of the "special injury" test for purposes of this motion.

■ To satisfy the special injury test, a plaintiff must allege an injury that is either: (1) " 'separate and distinct from that suffered by other shareholders,' " *In re Ionosphere Clubs,* 17 F.3d at 604 (quoting *Moran v. Household Int'l, Inc.,* 490 A.2d 1059, 1069 (Del.Ch.), *aff'd,* 500 A.2d 1346 (Del.1985)); or (2) based on a contractual right, such as a shareholder's right to vote or to assert majority control, that " 'exists independently of any right of the corporation.' " *Id.*

Plaintiff claims that he has satisfied both branches of this test. With respect to the first branch, he argues that he suffered a "separate and distinct" injury because he was the "only significant non-insider creditor" of PPIE and, therefore, the only person to have experienced a diminished ability to recover on a debt as a result of defendants' alleged misconduct. (Pl. Mem. at 15–16) With respect to the second branch, he argues that "the heart of his claims involve [sic] [his] right to receive rent under the Lease" and that only he, and not PPIE, is the beneficiary of that right. (*Id.* at 17)

Both arguments are more clever than persuasive. The first—that plaintiff has suffered a "separate and distinct" injury—fails for two reasons, one legal, the other factual. As a legal matter, although the first branch of the special injury test assumes the existence of multiple shareholders, one of whom suffered an injury separate and distinct from the others, the inquiry does not turn on that assumption. The ultimate issue is whether the injury about which the plaintiff complains resulted from a direct harm to the plaintiff or a general harm to the corporation. *See In re Ionosphere Clubs,* 17 F.3d at 605; *see also Lipton v. News Int'l. Plc,* 514 A.2d 1075, 1078 (Del.1986) (ultimate question is whether plaintiff has suffered a "special injury," however measured). If the harm is to the corporation, and therefore affects the entire corporate structure, an individual plaintiff has not suffered a particularized injury, regardless of whether he is the corporation's sole creditor. *See KBT Corp., Inc. v. Ceridian Corp.,* 966 F.Supp. 369, 373 (E.D.Pa.1997) (applying Pennsylvania law, court rejects claims that plaintiff's injury was "separate and distinct" from that of corporation simply because plaintiff was sole shareholder). In this case, the injury plaintiff complains of—his inability to recover the full value of the judgment against PPIE—is an indirect consequence of the harm suffered by PPIE generally. Stated otherwise, "even if plaintiff['s] losses could be traced to defendants' alleged misconduct, in substance, the complaint states a claim of injury to [the corporation] and it is from this injury that plaintiff['s] losses flowed." *In re Sunrise Securities,* 916 F.2d at 879. Under

these circumstances, plaintiff's claim can hardly be considered "separate or distinct."

There is a second reason why plaintiff's argument fails: it is based on the unsupported premise that plaintiff is in a unique position as the sole creditor of PPIE. (Pl. Mem. at 16) However, by plaintiff's own admission, he is not PPIE's sole creditor but rather its "only significant non-inside creditor." Imbedded in this statement is an implicit admission that there are other creditors who also may have claims against PPIE. Plaintiff makes this admission explicit in his complaint, in which he acknowledges that PPIE owes sizeable debts to both Polly Peck and PPI Holding (Compl.¶ 46), and in his memorandum of law, in which he acknowledges that other non-insider creditors have asserted less sizeable claims against PPIE totalling approximately $280,000. (Pl. Mem. at 11–12) Although plaintiff urges me to treat the insider claims as capital contributions rather than credit, and to disregard the non-insider claims altogether, I decline this invitation; the nature and validity of these claims are issues properly left to the bankruptcy court. For purposes of this motion, it suffices to observe that plaintiff does not appear to be in a unique position as a creditor of PPIE, and therefore that his potential inability to recover against the corporation is not an "injury which is separate and distinct from that suffered" by others. *Moran,* 490 A.2d at 1069.

Plaintiff argues next that he should be allowed to sue in his individual capacity because he has a contractual right to recover unpaid rents that "exists independently of any right" of PPIE. (Pl. Mem. at 16–18) This argument also fails. The second branch of the special injury test recognizes that, in limited situations, a shareholder may bring an individual action to vindicate a right that belongs to him by virtue of his status as a shareholder. The paradigmatic example of such a right is the right to vote or the right to assert majority control in a corporation. *See Lipton,* 514 A.2d at 1079 (right to vote); *Williams v. Geier,* Civ.A. No. 8456, 1987 WL 11285, at *3 (Del.Ch. May 20, 1987); *Condec Corp. v. Lunkenheimer Co.,* 43 Del.Ch. 353,

365–66, 230 A.2d 769, 777 (1967) (right to assert majority control); *see also In re Radiology Assocs., Inc.*, Civ.A. No. 9001, 1990 WL 67839, at *14 (Del.Ch. May 16, 1990) (right to receive dividends). In such cases, courts permit the injured shareholder to bring an individual suit because deprivation of his rights as a shareholder causes an injury that "relief to the corporation would not cure...." *In re Ionosphere Clubs*, 17 F.3d at 606.

In contrast to loss by a shareholder of the right to vote, plaintiff's injury results entirely from the injury suffered by the corporation. Indeed, PPIE's ability to recover in an action against defendants would provide direct relief for the injury about which plaintiff complains, *i.e.*, the reduction of "the amount potentially recoverable" on his judgment against PPIE. (Compl.¶ 46) Contrary to the import of plaintiff's argument, the fact that his claim sounds in contract rather than tort does not make his injury "special" under the second branch of the special injury test. Plaintiff's position is no different from that of other creditors or shareholders of PPIE whose rights are also based on a contract with PPIE and who also may have been injured as a result of defendants' alleged misconduct.

Because plaintiff's allegations do not support his special injury argument, he has failed to establish that his breach of fiduciary duty claims reflect a particularized, as opposed to general, injury. As plaintiff does not justify bringing an individual action under any other legal theory, these claims properly belong to PPIE's bankruptcy estate, *see In re Ionosphere Clubs*, 17 F.3d at 604, and the only party with standing to assert them is PPIE's trustee in bankruptcy. *See Kalb, Voorhis & Co.*, 8 F.3d at 132. Although a district court has the power to allow a plaintiff to amend or supplement his pleadings in order to establish standing, *see Thompson*, 15 F.3d at 249, in this case, plaintiff's lack of standing is the product of the nature of his claims, not an uncertainty in the record. Moreover, he has already amended his complaint once. Accordingly, no further submissions are warranted, and plaintiff's breach of fiduciary claims are dismissed.

### B. *Aiding and Abetting*

Plaintiff claims next that PPIE, as an insolvent company, itself owed duties of care and loyalty to him (Compl.60), and that the administrators aided and abetted PPIE's breach of these duties by causing the corporation to squander its assets and incur massive debt. (*Id.* ¶ 63; Pl. Mem. at 25) Relying heavily on the Second Circuit's recent decision in *In re Mediators*, 105 F.3d 822, plaintiff argues that, as an injured creditor, he can maintain an individual action against the administrators for aiding and abetting. (Pl. Mem. at 23–25) Defendants contend that *In re Mediators* applies only in cases in which the alleged aider and abettor is a third party. (Def. Reply Mem. at 18) They argue that the administrators cannot be considered third parties and therefore that this claim fails as matter of law. (*Id.* at 18–19, 21) Again, I agree.

Defendants' argument should be read as a motion to dismiss for failure to state a claim on which relief can be granted. *See* Fed. R.Civ.P. 12(b)(6). Dismissal is appropriate under Rule 12(b)(6) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court must take the facts alleged in the complaint as true and draw all reasonable inferences in the favor of the plaintiff. *See Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., Inc.*, 32 F.3d 697, 699–700 (2d Cir.1994).

As noted, plaintiff bases his aiding and abetting claim on *In re Mediators*. In that case, a committee of creditors, standing in the shoes of a bankrupt corporation, sued a bank and a law firm that had allegedly aided and abetted the corporation's sole shareholder and manager in stripping corporate assets. *In re Mediators*, 105 F.3d at 824–25. The court dismissed the suit on the ground that the corporation, through its sole shareholder, effectively had initiated the asset stripping scheme and that therefore only the individual creditors, and not the creditor committee, had standing to sue the third parties for aiding and abetting that scheme. *Id.* at 826.

The Court held that where third parties aid and abet a corporation's breach of duty to its creditors, the cause of action against those third parties belongs to the creditors "in their own right." *Id.* at 825; *see also Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 120 (2d Cir.1991) ("A claim against a third party for defrauding a corporation with the cooperation of management accrues to the creditors...."). The Court distinguished this situation from one in which the claim was against a corporation's fiduciary, when the action should be brought by the corporation's trustee in bankruptcy. *In re Mediators*, 105 F.3d at 826–27.

Thus, although *In re Mediators* permits a creditor to maintain an individual action for aiding and abetting, a third-party relationship between the alleged aider and abettor and the corporation is a necessary element in any such action. *See id.*, 105 F.3d at 825, 827 (aiders and abettors were bank and attorneys); *see also Hirsch*, 72 F.3d at 1094 (aider and abettor was accounting firm); *Wagoner*, 944 F.2d at 120 (aider and abettor was investment banking firm). That sort of relationship does not exist in this case. The factual underpinning of the complaint is that the administrators exercised control over PPIE by virtue of their authority over its parent company. (*Id.* ¶ 19–47) What is apparent from these factual allegations is that the administrators were part of PPIE's corporate structure, a position qualitatively different from that of the law firms, accounting firms, and banks that the Second Circuit has recognized as third parties for purposes of an aiding and abetting claim.

Plaintiff's conclusory statement that the administrators were "acting as third parties independent of PPIE" does not remedy the defect in this claim. (*Id.* ¶ 1) Although I must draw all reasonable inferences in plaintiff's favor, *see Jackson Nat'l Life Ins. Co.*, 32 F.3d at 699–700, I am not required to draw unreasonable inferences or to credit legal conclusions at odds with plaintiff's own factual allegations. *See De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 70 (2d Cir.), *cert. denied*, — U.S. —, 117 S.Ct. 509, 136 L.Ed.2d 399 (1996); *see also Hirsch*, 72 F.3d at 1092 ("conclusory allegations need not be credited ... when they are belied by more specific allegations in the complaint"). Accepting as true the facts alleged in the complaint, no reasonable fact-finder could conclude that the administrators were third parties in relation to PPIE. Accordingly, plaintiff's claim against the administrators for aiding and abetting is dismissed.

### C. Tortious Interference With Contract

Plaintiff's final claim is that the administrators tortiously interfered with the lease contract "by inducing and causing PPIE to breach and not perform its obligations thereunder." (Compl.¶ 68) Defendants argue that this claim should be dismissed on two grounds: (1) that the administrators cannot be considered third parties to the contract between PPIE and plaintiff; and (2) that, in any event, the claim is barred by the applicable statute of limitations. (Def. Reply Mem. at 23–26) Mindful of the standards for dismissal addressed in the previous section, *see* part III B, *supra*, I find both arguments persuasive.

To establish tortious interference under New York law, a plaintiff must allege, among other things, that the defendant intentionally induced a third party to breach a contract. *See M.J. & K. Co. v. Matthew Bender & Co., Inc.*, 220 A.D.2d 488, 489, 631 N.Y.S.2d 938, 940 (2d Dep't 1995). A corporation's officer or director generally cannot be held liable under a theory of tortious interference for causing the corporation to breach a contract. *See Murtha v. Yonkers Child Care Assn. Inc.*, 45 N.Y.2d 913, 915, 411 N.Y.S.2d 219, 220, 383 N.E.2d 865 (1978). Nor can an agent be held liable for inducing his principal to breach a contract so long as he is acting within the scope of his authority. *See Nu–Life Constr. Corp. v. Bd. of Educ. of the City of New York*, 204 A.D.2d 106, 107, 611 N.Y.S.2d 529, 530 (1st Dep't 1994). These rules are consistent with the principle that a defendant cannot tortiously interfere with a contract if he is not a "third part[y] unrelated to the contract." *Burdett Radiology Consultants, P.C. v. Samaritan Hosp.*, 158 A.D.2d 132, 136, 557 N.Y.S.2d 988, 991 (3rd Dep't 1990).

 The administrators are not third parties unrelated to PPIE's contract with plaintiff. As discussed above, the premise of the complaint is that the administrators were corporate insiders who had authority over PPIE through their control over Polly Peck. To the extent that the administrators caused PPIE to breach the contract with plaintiff, they did so in the exercise of this authority. Moreover, there are no allegations that the administrations acted with malice or committed independent tortious acts in causing the breach of contract. *See Murtha,* 45 N.Y.2d at 915, 411 N.Y.S.2d at 220, 383 N.E.2d 865 (setting forth limited exception to general immunity of directors and officers). Thus, whether considered agents or *de facto* directors of PPIE, *see* compl. ¶ 51, the administrators are immune from liability under a theory of tortious interference.

Apart from its facial insufficiency, the tortious interference claim is also time-barred. "[T]he appropriate period of limitations for causes of action alleging a tortious interference with contractual relations is three years." *Vanderminden v. Vanderminden,* 226 A.D.2d 1037, 1043, 641 N.Y.S.2d 732, 738 (3rd Dep't 1996), *citing* N.Y. C.P.L.R. § 214(4) (McKinney 1990); *see also Rosemeier v. Schenker Int'l, Inc.,* 895 F.Supp. 65, 66 (S.D.N.Y.1995). In this case, plaintiff filed the original complaint in September 1996, five years after PPIE breached its contract with plaintiff (Compl.¶ 5) and two years after the statute of limitations had run. Plaintiff contends that he did not discover that the administrators had induced the breach until August 1996 and that, prior to that time, the administrators had fraudulently concealed their actions. (*Id.* ¶ 69) Although the statute of limitations may be tolled while a defendant fraudulently conceals facts that would have alerted the plaintiff to his cause of action, *see, e.g., Keating v. Carey,* 706 F.2d 377, 382 (2d Cir.1983), allegations of fraudulent concealment are governed by the pleading requirements of Fed.R.Civ.P. 9(b). *See, e.g., Armstrong v. McAlpin,* 699 F.2d 79, 88 (2d Cir.1983); *Butala v. Agashiwala,* 916 F.Supp. 314, 320 (S.D.N.Y. 1996). Plaintiff's naked assertion that "the Administrator Defendants fraudulently concealed their actions" (compl.¶ 69) does not approach the level of detail necessary to satisfy Rule 9(b). *See Armstrong,* 699 F.2d at 88 ("Appellants' generalized and conclusory allegations of fraudulent concealment do not satisfy the requirements of Fed.R.Civ.P. 9(b)."). Accordingly, because plaintiff has failed to allege facts sufficient to justify tolling the limitations period, and because that period expired well before he filed this action, the claim for tortious interference is time-barred. *See* N.Y. C.P.L.R. § 214(4).

\* \* \*

For the above reasons, defendants' motion is granted, and the complaint is dismissed.