■ In the Matter of JOSEPH KALICHMAN, Deceased. ANNE K. PFEFFER, Respondent; ROSE KALICHMAN et al., Appellants, et al., Respondent. [820 NYS2d 648]—

Carpinello, J. Appeal from an order of the Surrogate's Court of Albany County (Doyle, S.), entered December 14, 2005, which, inter alia, granted petitioner's motion for a preliminary injunction.

Joseph Kalichman (hereinafter decedent) died in December 2002 leaving behind a wife (respondent Rose Kalichman), two daughters (petitioner and respondent Linda Hiller) and a son

(respondent Morris Kalichman). Decedent was an active and successful businessman who had accumulated substantial wealth until he suffered a severe brain injury from a fall on ice in 1994.[1] A November 2000 last will and testament executed by him was offered for probate by his wife, who was initially appointed the preliminary executor but later removed and replaced with an independent temporary administrator.[2] Thereafter, petitioner filed objections to probate and commenced a proceeding seeking to restrain her mother and brother from transferring, encumbering or otherwise disposing of various assets that belonged to decedent on the ground that decedent was incompetent and/or unduly influenced when he entered into certain financial transactions. At issue is the propriety of an order of Surrogate's Court granting petitioner a preliminary injunction.[3]

Upon our review of the record, we are satisfied that Surrogate's Court did not abuse its discretion in granting a preliminary injunction, which required petitioner to demonstrate a likelihood of success on the merits, irreparable injury and a balance of equities in her favor (*see Doe v Axelrod*, 73 NY2d 748, 750 [1988]; *see also* CPLR 6301). In addition to challenging decedent's capacity to execute the November 2000 will, petitioner and her sister take issue with two financial transactions in the years prior to his death. First, they assert that their mother had no authority to forgive $483,000 in lease payments owed to decedent by their brother pursuant to a May 1996 lease agreement (which also contained an option to purchase).[4] Next, they claim that on March 1, 2000, their mother and brother improperly caused decedent, who was allegedly incapable at that point in time to understand the complexity of the transaction, to give his wife (their mother) all of his stock in two closely-held corporations (valued at $10 million) which she, in turn, simultaneously placed in a grantor retained annuity trust. Pursuant to this annuity trust, which was drafted by their brother's attorney, their mother was the sole annuitant for its three-year duration and their brother was its sole trustee and remainder-

---

**1.** Given decedent's "advanced age" at the time of his fall (he was then 72 years old) and the severity of his injury, his treating neurological surgeon expressed doubt that he would ever attain a totally independent existence. Indeed, it appears that he never did.

**2.** The propriety of this latter decision is the subject of a separate appeal (*Matter of Kalichman*, 31 AD3d 1089 [2006] [decided herewith]).

**3.** Hiller joined in the relief sought by her sister.

**4.** According to petitioner, both the agreed-upon rent and the option to purchase price under this lease were less than fair market value. Her brother, nevertheless, still failed to make any rent payments and her mother never demanded that he do so.

man. According to petitioner and her sister, this scheme reduced decedent's probate estate to $800,000 and, more importantly, resulted in the inequitable treatment of his three children vis-à-vis their inheritance, which was never his intention.

As to the likelihood of success on the merits, we find the testimony of decedent's long-time accountant and attorney to be compelling.[5] Both men unequivocally averred and/or testified that decedent was not able to understand the complex financial decisions involving the transfer of all his stock to his wife or the subject annuity trust. Moreover, according to both of these long-time advisors, decedent had always emphasized his desire to treat his three children equally in his estate and was simply unable to appreciate the fact, owing to his diminished mental capacity, that the stock transfer and annuity trust went against this longstanding wish.

Specifically, according to an affidavit filed by decedent's accountant, while decedent was never quite the same following his fall in 1994, his mental condition significantly deteriorated between 1997 and 1999 to the point where he "spoke in only one or two word sentences [and] [i]t was impossible to have a meaningful conversation with him." Upon learning in late 1999 that decedent's son obtained an attorney who intended to prepare the subject annuity trust, the accountant attended a meeting which had been called "to determine whether [decedent] was competent to understand the [annuity trust] or to make a radical change to his estate plan." According to the accountant's affidavit, decedent did not meaningfully participate in this meeting and "[i]t was obvious that he did not follow the discussion and could not understand the [annuity trust] or the fact that the [annuity trust] was intended to achieve a major change in his estate plan."[6] Notably, following this meeting, the accountant's services were terminated and he was not permitted further contact with decedent.

According to decedent's attorney, he too attended the subject meeting in late 1999 and raised objections to decedent's capac-

---

**5.** While the professionals involved in the stock transfer and annuity trust claim that decedent was indeed competent, we note that "the mere fact that there indeed may be questions of fact for trial does not preclude a court from exercising its discretion in granting an injunction" (*Egan v New York Care Plus Ins. Co.*, 266 AD2d 600, 601 [1999]; *see* CPLR 6312 [c]).

**6.** He similarly testified at a deposition that decedent was not even able to communicate as of the 1999 meeting let alone understand the complex nature of the transactions being discussed.

ity to understand what was happening.[7] He objected to the annuity trust because it was inconsistent with decedent's dispositive scheme in that it gave a major asset to one sibling without a corresponding asset to the other two siblings. According to the attorney, he was "disturbed" and "bothered" by the whole situation. Notably, shortly after this meeting, he too was discharged. Medical records in the record also support petitioner's claim that decedent was incompetent to make these financial decisions.

Moreover, we are equally satisfied that petitioner will be irreparably harmed absent the preliminary injunction and that the equities balance in her favor (*see e.g. Vanderminden v Vanderminden*, 226 AD2d 1037, 1041 [1996]). First, neither decedent's wife nor son opposed petitioner's relief with proof that either he or she would be financially harmed by it. Indeed, in an affidavit opposing petitioner's request for provisional relief, decedent's wife revealed other sources of income not covered by the preliminary injunction. Moreover, given the seriousness of the allegations of undue influence committed by both decedent's wife and son, petitioner's concern that the assets would be dissipated absent the preliminary injunction is well taken. We are thus satisfied that the preliminary injunction was properly granted so as to preserve the status quo pending a final resolution of this matter (*see id.* at 1042).

We are unpersuaded by the parties' remaining contentions.

Mercure, J.P., Mugglin, Rose and Kane, JJ., concur. Ordered that the order is affirmed, with costs.

---

7. Of note, this attorney questioned the capacity of decedent's elderly wife to understand the complex nature of the subject trust.