**HOUBIGANT, INC., Etablissement Houbigant, Plaintiff,**

v.

**DEVELOPMENT SPECIALISTS, INC., et al., Defendants.**

**No. 01CIV7388LTSGWG.**

United States District Court, S.D. New York.

Sept. 30, 2002.

Morrison Cohen Singer & Weinstein, LLP, by Edward P. Gilbert, New York City, Patton Boggs, LLP, by John Schryber, Read K. McCaffrey, Washington, D.C., for plaintiffs, Houbigant, Inc. and Etablissement Houbigant.

Gregory P. Joseph Law Offices, LLC, by Pamela Jarvis, New York City, for defendants, Development Specialists, Inc., William A. Brandt Jr., David H. Tolly.

Biedermann, Hoenig, Massamillo & Ruff, P.C., by Anthony W. Eckert III, New York City, Rooks, Pitts and Poust, by Robert K. Villa, Chicago, Illinois, for defendant, Nicholas J. Miller.

### OPINION AND ORDER

SWAIN, District Judge.

Houbigant, Inc. and Establissement Houbigant ("Plaintiffs") bring this action, alleging trademark infringement in violation of the Lanham Act, 15 U.S.C. sections 1114, 1117 and 1125, and asserting a variety of common law claims[1] against Development Specialists, Inc. ("DSI") and its employees William A. Brandt Jr. ("Brandt") and David H. Tolly ("Tolly") (collectively "Defendants"), as well as Nicholas J. Miller ("Miller" or "Defendant"), Administrator of Dana U.K. Limited ("Dana U.K."). This matter comes before the Court on the motions of Defendants Development Specialists, Inc. ("DSI"), William A. Brandt Jr. ("Brandt") and David H. Tolly ("Tolly") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint for failure to state a claim upon which relief may be granted and, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, to dismiss the complaint for lack of subject matter jurisdiction. Defendant Nicholas J. Miller ("Miller") has also moved for dismissal of the complaint pursuant to Rules 12(b)(1), (2), (3) and (6) of the Federal Rules of Civil Procedure and for dismissal, in deference to a pending foreign action, of Counts VII through XI of the Complaint.

---

1. The common law claims include (1) breach of fiduciary duty (against Brandt and Tolly); (2) professional negligence (against DSI, Brandt and Tolly); (3) breach of third-party beneficiary contract (against DSI); (3) common law trademark infringement (against DSI, Brandt and Tolly); (4) common law trademark infringement (against all defendants); and (5) misappropriation of trade secrets (against all defendants).

Plaintiffs assert that the Court has jurisdiction of this matter pursuant to 28 U.S.C. sections 1331, 1367 and 1338.

The Court has considered thoroughly all submissions and arguments related to these motions. For the following reasons, the motion of defendants DSI, Brandt and Tolly to dismiss is granted in part and denied in part; defendant Miller's motion to dismiss is denied.

## BACKGROUND

Plaintiffs allege that they are the owners of various trademarks for perfume products licensed to Dana Perfumes Corporation ("Dana U.S."), Houbigant Limitée ("Limitée") (collectively, the "Licensees") and the Licensees' parent corporation, Renaissance Cosmetics, Inc. ("RCI" and, together, with the Licensees, the "Company"). (Compl. ¶¶ 1, 16–19, 74.) In August of 1998, the Company retained defendants DSI and DSI's employees Brandt and Tolly as consultants to manage a "financial crisis." (*Id.* ¶ 38) In June of 1999, the Company filed voluntarily for protection under Chapter 11 of the Bankruptcy Code in federal court in Delaware (the "Bankruptcy Proceeding"). (*Id.* ¶ 76) Defendant Miller was the Administrator in receivership of Dana U.K., a wholly owned subsidiary of Dana U.S. (*Id.* ¶ 12)

In their Complaint, Plaintiffs allege that "the Licensees in the Spring of 1997 began a campaign of infringement of the Houbigant marks and the sale of Houbigant goods through the gray market." (*Id.* ¶ 36.) Plaintiffs assert that the infringement was a principal cause of the Company's "financial crisis" that led, among other things, to a June 1998 public disclosure that the Company had negative net worth and was insolvent. (*Id.* ¶¶ 2, 38.) Defendants DSI, Brandt and Tolly were hired as "crisis managers" by the Company in August 1998, pursuant to a professional services contract between DSI, on the one hand, and RCI and the Licensees, on the other. (*Id.* ¶ 38–40.) Brandt and Tolly became officers and directors of the Company. (*Id.* ¶ 38, 44.) They were not, however, put on the Company's payroll. Rather, their services to the Company were billed by DSI as professional services at rates ranging from $230–330 per hour. (*Id.* ¶ 45.) DSI, Brandt and Tolly also, according to the Complaint, caused the Company to hire and compensate outside advisors to whom the Company paid high fees and retainers. (*Id.* ¶ 46.)

Plaintiffs assert that defendants DSI, Brandt and Tolly took full control of RCI and the Licensees and, as a result of that undertaking, owed affirmative duties to Plaintiffs to preserve the value of Houbigant brands and to avoid actions resulting in breaches of the licensing agreements. According to Plaintiffs, they retained such control through August 1999. (*Id.* ¶¶ 38, 41, 42.) Plaintiffs claim that DSI, Brandt and Tolly had a duty to eliminate the infringement of Houbigant trademarks and the wasting of the license asset. (*Id.* ¶ 41.) Plaintiffs allege that DSI, Brandt and Tolly instead escalated the Licensees' infringement of the Houbigant marks (*id.* ¶ 49) and that Miller, who was designated Administrator of Dana U.K. after that company entered British Administration proceedings on or about October 12, 1998, exercised control over Dana U.K. that included "the direction of Dana U.K.'s unauthorized production and sale of counterfeit Houbigant products and infringement of the Houbigant marks." (*Id.* ¶ 58.) They assert that Miller's compensation rate was artificially inflated pursuant to a scheme among DSI, Brandt, Tolly and Miller. (*Id.* ¶ 64.) Plaintiffs further allege that Defendants DSI, Brandt, Tolly and Miller facilitated the manufacturing and distribution of counterfeit Houbigant products by unli-

censed third-parties including Dana U.K. (*id.* ¶ 56, 57); that defendants DSI, Brandt, Tolly and Miller induced numerous breaches of the Houbigant licensing agreements (*id.* ¶ 66); and that none of the acts of infringement or breaches of licensing agreements was disclosed to Houbigant by Defendants. (*Id.* ¶ 70.) Plaintiffs also allege that Dana U.K. "and its componentry customers in the U.K. and the U.S." sold approximately $35 million of counterfeit goods, which arose principally through a transaction documented in a certain U.K. Asset Sale and Purchase Agreement dated March 12, 1999 (the "U.K. Agreement"). (*Id.* ¶ 62.) Brandt, Tolly and DSI are alleged to have affirmatively misled Houbigant as to the level of the Company's assets and its compliance with the Licenses. (*Id.* ¶ 71–72.)

## MOTION TO DISMISS BY DEFENDANTS DSI, BRANDT AND TOLLY PURSUANT TO RULES 12(b)(1) AND 12(b)(6)

Defendants DSI, Brandt and Tolly move to dismiss the Complaint on several grounds. They assert that Plaintiffs lack standing to sue Brandt and Tolly for breach of fiduciary duty and that Plaintiffs' infringement allegations do not state a fiduciary duty claim. These Defendants further assert that Plaintiffs' professional negligence claim fails as a matter of law because DSI, Brandt and Tolly are not professionals within the meaning of New York law and because DSI did not owe a duty of professional care to Plaintiffs. Defendants argue that Plaintiffs cannot claim third-party beneficiary status with respect to the professionals' contractual obligations to the Company under certain retainer agreements dated August 1998 (the "August Retainer Agreement") and June 1999 (together, the "Retainer Agreements"), and that *res judicata* bars Houbigant's trademark infringement claims (Counts IV

through IX) because Houbigant has already had a full and fair opportunity to litigate them in the Delaware Bankruptcy Proceeding. Defendants also contend that Houbigant's trade secret misappropriation claim must be dismissed because Plaintiffs fail to plead that the subject information was secret, and further argue that the misappropriation claim is barred by *res judicata.* Finally, Defendants assert that Houbigant's tortious interference allegations fail to state a claim.

*Motion to Dismiss Breach of Fiduciary Duty Claim Pursuant to Fed.R.Civ.P. 12(b)(1)*

Arguing that, as creditors, Plaintiffs lack standing to assert a breach of fiduciary duty claim against Brandt and Tolly for actions taken in connection with their work for the Company, these defendants assert that the Court lacks subject matter jurisdiction of the fiduciary breach claim asserted in Count I of the Complaint. A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure when the district court lacks the statutory or constitutional power to adjudicate it. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000). A plaintiff asserting subject matter jurisdiction generally has the burden, once challenged, of proving by a preponderance of the evidence that jurisdiction exists. *See id.*

Plaintiffs assert that Defendants "by virtue of their positions as officers and directors of the insolvent entities" owed Plaintiffs, as creditors, affirmative duties "to preserve the value of the Houbigant brands and to avoid actions resulting in breaches of the Licensing Agreements as well as to eliminate the infringement of the Houbigant trademarks and the wasting of the license asset, its intrinsic value, brand

equity, sales, reputation and goodwill." (*Compl.* ¶ 48.) Plaintiffs allege that Defendants breached these duties by escalating and inducing the infringement and related improper conduct of the Company and third parties (*id.* ¶¶ 49, 66, 69), thus diluting the value of the Company's right to use the Plaintiffs' trademarks and reducing the value of the Company as a whole, to the detriment of Plaintiffs and all other creditors. (*Id.* ¶ 49–69.) Defendants assert that Plaintiffs lack standing to assert their breach of fiduciary duty claim because any claims against management arising from diminution of the Company's assets belong to the Company as debtor-in-possession in a pending Chapter 11 bankruptcy proceeding.[2] Defendants argue that, because standing is a jurisdictional issue, it can be analyzed under 12(b)(1) of the Federal Rules of Civil Procedure, implicating subject matter jurisdiction.

■■■ The parties generally agree that management of an insolvent entity stands in a fiduciary relationship to creditors. They disagree, however, as to whether such relationship supports a cause of action that Plaintiffs have standing to assert. In evaluating whether a creditor has standing to assert a cause of action for harm to its obligee, courts in this Circuit invoke a "special injury" test. Standing is found only if the plaintiff alleges an injury that is either "separate and distinct from that suffered by other shareholders, or a wrong involving a contractual right." *In*

*re Ionosphere Clubs, Inc.,* 17 F.3d 600, 604 (2d Cir.1994) (citing *Moran v. Household Int'l, Inc.,* 490 A.2d 1059, 1069 (Del. Ch.), *aff'd,* 500 A.2d 1346 (Del.1985)). If the wrong sought to be redressed is one remediable by relief to the corporation, the claim is derivative and a creditor or shareholder lacks standing to assert it against a third party. Where, however, the "wrong can be rectified only by relief to [the would-be plaintiff] ... because the corporation has not been injured," relief to the corporation would not be effective and the plaintiff has standing. *Ionosphere Clubs,* 17 F.3d at 605–06; *cf. St. Paul Fire and Marine,* 17 F.2d at 701–02 (analyzing whether claims, if proven, would bring property into bankruptcy estate for purpose of determining applicability of property of the estate and standing). "Whether the rights [at issue] belong to the debtor or the individual creditors is a question of state law." *Id.* at 700 (citation omitted).

In *Solow v. Stone,* 994 F.Supp. 173, 177 (S.D.N.Y.1998), *aff'd,* 163 F.3d 151 (2d Cir. 1998) the Court, in granting a Rule 12(b)(1) motion, applied a similar analysis and held that since the corporate defendant in that case was a chapter 11 debtor, a suit by an individual creditor could only be maintained if the suit did not involve the property of the estate.[3] The *Solow* plaintiff, a landlord, had sued the administrators of a bankrupt company's parent for breach of fiduciary duty and tortious interference, alleging that the defendants had engaged in acts of waste and mismanage-

---

**2.** "Constitutional principles of standing require an allegation that the plaintiff sustained a direct injury that can be traced to the defendant's conduct, and relief from this injury must be likely to follow from an adjudication favorable to the plaintiff." *St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.,* 884 F.2d 688, 695 (2d Cir.1989); *see also, Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1091–92 (2d Cir.1995).

**3.** "Property of the estate" for bankruptcy law purposes includes "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541 (West 1993). *See Solow,* 994 F.Supp. at 178; *In re Mid–Island Hospital, Inc.,* 276 F.3d 123, 128 (2d Cir.2002).

ment. *Id.* at 176. The *Solow* Court held that plaintiff would have standing "only if the breach of fiduciary duty claims are not property of the estate." *Id.* at 178. In that case, the plaintiff was held to lack standing because his claims against the defendant were premised on his inability to recover the full value of judgment against the parent company. His injury was thus "an indirect consequence of the harm" suffered by the parent company and, therefore, was not "separate or distinct" under the applicable state law. *Id.* at 179.

Count I of Plaintiffs' Complaint alleges generally that Brandt and Tolly, as Company officers and directors "at a time when the Licensees were insolvent or on the verge of insolvency [,] ... owed a fiduciary duty to Houbigant as a creditor of the Licensees" and that Brandt and Tolly "breached their fiduciary duties to Houbigant," resulting in damages to Houbigant. (Compl. ¶¶ 84–86.) In connection with the instant motion Plaintiffs have characterized the nature of this harm as twofold: Brandt's and Tolly's alleged improper actions "served to diminish the brand equity of the Houbigant marks, thus wasting the Companies' ability to utilize its greatest asset and return to a state of solvency;" and that "Plaintiffs were damaged by ... a diminution in the value of their trademarks caused by this breach." (Pl.'s Opp'n at 15.) Plaintiffs argue that their harm is "particularized" in that they seek damages "for the ... detrimental effects that ... [the] breaches ... had on Houbigant's trademarks," (*id.* at 16), pointing out that "[n]either a trustee or other creditor could recover for the diminution in value of plaintiffs' trademarks or any of

the other unique damages claimed by plaintiffs." *Id.* at 17.

▇ To the extent Plaintiffs' damages claim is premised on the wasting of the Licensees' assets, it is clearly common to all creditors, and is one that could be asserted by the Licensees themselves. Plaintiffs, as individual creditors, thus lack standing to assert a direct claim. *Cf. Solow,* 994 F.Supp. at 178–79. The Court lacks subject matter jurisdiction of the aspect of the claim that alleges wasting of the Licensees' assets, and dismissal pursuant to Rule 12(b)(1) is warranted. Furthermore, to the extent the cause of action is for harm to Plaintiffs' specific trademark or other property rights, it does not arise from the manager-creditor fiduciary relationship and Count I fails to state a claim upon which relief can be granted and therefore must be dismissed pursuant to Rule 12(b)(6).[4] Count I will therefore be dismissed in its entirety.

*Motion to Dismiss Complaint Pursuant to Fed.R.Civ.P. 12(b)(6)*

Defendants' collective motion also seeks dismissal of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In deciding a motion to dismiss for failure to state a claim upon which relief may be granted under 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept as true the material facts alleged in the complaint and draw all reasonable inferences in plaintiff's favor. *Grandon v. Merrill Lynch,* 147 F.3d 184, 188 (2d Cir.1998). The court must not dismiss the action unless " 'it appears beyond doubt that the plaintiff can prove no

---

**4.** Indeed, the "particularized injury" case cited by Plaintiffs in support of this aspect of their argument finds an independent cause of action grounded in patent infringement, not in a fiduciary relationship arising from credi-

tor status. *See* Pl.'s Opp'n at 17 and *Variable–Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc.,* 945 F.Supp. 603, 607–08 (S.D.N.Y.1996), and cases cited therein.

set of facts in support of his claim which would entitle him to relief.' " *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Sims v. Artuz,* 230 F.3d 14, 20 (2d Cir.2000).

*Negligence Claim*

In Count II of the Complaint, Plaintiffs assert a claim denominated as one for "professional negligence." Plaintiffs allege that Defendants "provided their work product and the benefits of their professional services" to Plaintiffs, intended Plaintiffs to rely on those services for Plaintiffs' "assessment of the Licensees' performance under the Licensing Agreements," and that Defendants "evinc[ed] their recognition of [Plaintiffs'] reliance upon their services" by meeting with and making "representations" to Plaintiffs. (Compl.¶ 88.) Plaintiffs go on to allege that, "as a result," Defendants owed Plaintiffs a duty to exercise reasonable care "in the professional management of RCI and the Licensees and the administration of the Licensing Agreements," that Defendants breached this duty "in the execution of their professional services," and that Plaintiffs suffered damages as a proximate cause of that alleged breach. (*Id.* ¶¶ 89, 90.) Defendants argue that Plaintiffs' professional negligence claim fails as a matter of law because Defendants are not "professionals" within the meaning of New York law and that, even if the Defendants did owe a duty of professional care, such duty would extend only to the Company because the Defendants have no relationship of privity or near-privity with Plaintiffs. (Memo. of Law in Supp. of Mot. of Defs.' to Dismiss Compl. at 8.)

Under New York law, a plaintiff asserting a claim for negligence, or malpractice by a professional, must make a showing that: defendant owed a duty to the plaintiff; defendant breached that duty; there is "a reasonably close causal connection between the contact and the resulting injury," and "actual loss, harm or damage" resulted from the breach. *Cromer Finance Ltd. v. Berger,* 137 F.Supp.2d 452, 495 (S.D.N.Y.2001). Under New York law, the establishment of the underlying duty requires "a showing that there was either actual privity of contract between the parties or a relationship so close as to approach that of privity." *Prudential Ins. Co. v. Dewey, Ballantine, Bushby, Palmer, Wood,* 80 N.Y.2d 377, 382, 590 N.Y.S.2d 831, 605 N.E.2d 318 (1992). There is no allegation of privity as between Plaintiffs and Defendants; the inquiry thus turns to whether Plaintiffs have alleged a relationship of "near-privity" with Defendants sufficient to support a cause of action for damages for professional negligence. Such a "special relationship" or "near-privity" has been found where accountants or lawyers have made "negligent misrepresentations to known third parties whom the professional knew would rely on the misrepresentations." *Bastys v. Rothschild,* 2000 WL 1810107, *53 (S.D.N.Y. Nov.21, 2000). This exception to the privity rule has been construed narrowly. *See, e.g., Doehla v. Wathne,* No. 98 Civ. 6087(CSH), 1999 WL 566311, *20 (S.D.N.Y. Aug.3, 1999). Plaintiffs must establish:

(1) an awareness by the maker of the statement that it is to be used for a particular purpose; (2) reliance by a known party on the statement in furtherance of that purpose; and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance.

*Prudential Ins. Co. v. Dewey, Ballantine,* 80 N.Y.2d 377, 382, 590 N.Y.S.2d 831, 605 N.E.2d 318 (1992); *State of California Public Employees' Retirement System v.*

*Shearman & Sterling,* 95 N.Y.2d 427, 434, 718 N.Y.S.2d 256, 741 N.E.2d 101 (2000).

Here, Plaintiffs' contractual relationship was with the Company and not with Defendants. (*See* Compl. ¶ 16.) Plaintiffs therefore have not, and cannot, plead contractual privity with Defendants. Further, the Complaint fails to allege that Defendants knew that Plaintiffs would and did rely on Defendants and that such reliance was premised on conduct by Defendants evincing an understanding that Plaintiffs would do so. Missing from the Complaint is any allegation suggesting that the purpose of Defendants' relationship with the Company was reliance by Plaintiff on Defendants' alleged negligently furnished representations. Plaintiffs have failed to sufficiently plead any misrepresentations that would fall under the "special relationship" or "near privity" exception.

Further, while Defendants are alleged to have held themselves out as individuals with specialized knowledge and skill (Compl.¶¶ 70–73), the Complaint fails to plead that Defendants were "professionals" for purposes of a claim for professional negligence. In New York, a "professional" is defined as someone that possesses some of the following qualities: "extensive formal learning and training, licensure and regulation indicating a qualification to practice, a code of conduct imposing standards beyond those accepted in the marketplace and a system of discipline for violation of those standards." *Chase Scientific Research, Inc. v. NIA Group, Inc.,* 96 N.Y.2d 20, 29, 725 N.Y.S.2d 592, 749 N.E.2d 161 (2001). The Complaint does not plead any of the recognized criteria for professional status.

Count II of the Complaint thus fails to state a claim upon which relief may be granted and will be dismissed.

*Third Party Beneficiary Claim*

In Count III of the Complaint, Plaintiffs assert that DSI, Brandt and Tolly breached the terms of the Retainer Agreements, pursuant to which RCI retained DSI to perform "turnaround management and consulting services . . . in connection with RCI's financial restructuring." August Retainer Agrmt. at 1; Compl. ¶¶ 95, 96. Asserting that Plaintiffs were third-party beneficiaries of the Retainer Agreements, Plaintiffs seek to recover damages in connection with the alleged breach. (Compl.¶¶ 92, 96.)

■ New York courts have adopted the standard set forth in the Restatement (Second) of Contracts for the determination of third-party beneficiary status in connection with contractual undertakings. *Fourth Ocean Putnam Corp. v. Interstate Wrecking* Co., 66 N.Y.2d 38, 495 N.Y.S.2d 1, 5, 485 N.E.2d 208 (1985). Under this standard, a party is a third party beneficiary entitled to assert rights under a contract if it is an "intended" beneficiary, as opposed to an "incidental" beneficiary, of a promise.

> [A] beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either: (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

*Restatement (Second) of Contracts* § 302(1) (1981); *see IBS Ketel, Ltd. v. Hanil Bank, Korea,* No. 98 Civ. 3507(DC), 1999 WL 639696 *1 (S.D.N.Y.1999). While a third-party beneficiary is not required to be named in the contract, the contract must demonstrate an intent by the parties to provide the third party with a sufficient-

ly immediate benefit to justify recognition of a cause of action. *Id.; State of California*, 95 N.Y.2d at 434–35, 718 N.Y.S.2d 256, 741 N.E.2d 101.

 In their memorandum in opposition to the instant motion to dismiss, Plaintiffs cite four passages from the August Retainer Agreement for the proposition that "[t]he Retention Agreement establishes that DSI assumed a direct obligation to the Companies' creditors, including Houbigant" and as indicating "the agreement of the parties that DSI assumed direct obligations to the Companies' creditors."[5] (Pl.'s Opp'n at 25.) A review of the cited passages in context makes it clear that Plaintiffs' selective quotations provide an insufficient basis for Plaintiffs' pursuit of a claim that they were an intended third-party beneficiary of the Retainer Agreements. The italicized material in the following quotations was *omitted* from the passages quoted in Plaintiffs' brief; the underscoring of portions of the sentences was supplied by Plaintiffs. The passages on which Plaintiffs rely are as follows:

*1. Liquidity. [DSI] will identify liquidity sources, within the Companies and without, including relationships with the Companies' customers, suppliers, and lenders.... Our role in this regard will include a review of all current operating and overhead disbursements incurred by the Companies to determine if such expenses are reasonable and necessary given the Companies' present circumstances, and further to* ensure that the Companies' financial expenditures made in connection with its day-to-day activities are consistent with the objectives of the pending restructur-

ing and the attempt to formulate an arrangement *acceptable to the creditors* now involved with the Companies.

August Retainer Agreement at ¶ 1 (italics supplied; underscoring in Plaintiffs' memorandum). Plaintiffs also cite the following passage:

*2. Operations and Restructuring. [DSI] will also review the Companies' businesses and operations, and its historical and projected financial condition. In this regard, we will* assist the Companies in the further development, refinement, review and implementation of overall business plans (including financial and credit restructuring efforts) designed to *restore the confidence of the Companies' lenders and creditors.*

*Id.* at ¶ 2 (italics supplied; underscoring in Plaintiffs' memorandum). The "Operations and Restructuring" paragraph continued:

*To the extent RCI requests, we shall participate in discussions with key constituencies in furtherance of the business plan performance and restructuring activities.*

*Id.* (italics supplied; underscoring in Plaintiffs' memorandum). The final passage relied upon by Plaintiffs reads in context:

*In providing the Services, [DSI] will require the full cooperation of the Companies' management and advisers. We will augment, not replace, current management; we will work collaboratively with the Companies' management on all phases of our engagement to the fullest extent possible; and we will* report directly to RCI's Chief Executive Officer as a part of a team intended to *preserve*

---

**5.** On a Rule 12(b)(6) motion to dismiss, the Court is permitted to take into account the contents of documents attached to or incorporated in the complaint, *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir.1989), as well as docu-

ments that are "integral" to the complaint. *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808 (2d Cir.1996).

*the Companies' value for all constituencies* to the fullest extent possible under the circumstances.

*Id.* at ¶ 4 (italics supplied; underscoring in Plaintiffs' memorandum).

Far from indicating "the agreement of the parties that DSI assumed direct obligations to the Companies' creditors," these passages, read together or separately, indicate clearly that the retention of DSI was to pursue a business plan on behalf of RCI and its affiliates. That business plan included, among other things, restructuring credit relationships. Nothing in the Retainer Agreements suggests that RCI and DSI (which was explicitly required to report to RCI's CEO) intended to give individual constituents such as Plaintiffs direct rights under the agreement. In that the stated intention of the Retainer Agreements was for DSI to provide services "to, and for the benefit of the Companies" in connection with "RCI's financial restructuring," [6] nothing in the text of the document even suggests that "recognition of a right to performance in [Houbigant] is appropriate to effectuate the intention of the parties." *See Restatement Second of Contracts* § 302(1). Thus, Plaintiffs' third party beneficiary claim fails the first prong of the Restatement analysis on the plain language of the agreement.

Nor do Plaintiffs' generalized allegations of intended beneficiary status suffice to state a claim under the second prong of the Restatement test. Plaintiffs assert that DSI "intended that its performance of the professional service contract would benefit Houbigant,[7] one of RCI's and the Licensees' major creditors," that DSI "knew that Houbigant intended to rely on DSI's performance of its professional services contract ... in Houbigant's ongoing

evaluation of whether or not RCI and the Licensees were complying with the terms of the Licensing Agreements and whether or not to terminate those agreements," and that, by discussing the Companies' financial health with Houbigant and providing reassurances to Houbigant that the Companies "had substantial assets and would meet their obligations to Houbigant under the Licensing Agreements," DSI "acknowledged that Houbigant was relying upon DSI's performance of its professional services contract." (Compl.¶¶ 92–94.) These allegations, standing alone and taken as true, are insufficient to state a claim under the Restatement standard for third-party beneficiary status. Plaintiffs allege simply that DSI intended that Houbigant benefit, and that in the course of the performance of its duties DSI was aware that Houbigant was relying upon it.

Post-contractual interaction between a contracting party and a would-be third party beneficiary does not establish the intent of the parties to the contract. Nor are the communications alleged inconsistent with DSI's contractual undertakings to communicate with creditors and other Company constituents in furthering the Companies' business plan. Furthermore, Plaintiffs make no allegations with respect to the intent of RSI. The Restatement standard requires both that recognition of a right to performance of the would-be beneficiary be "appropriate to effectuate the intention of the *parties*" and that circumstances indicate that the "*promisee* intends to give the beneficiary the benefit of the promised performance." *See Restatement Second of Contracts* § 301(1) (1981) (emphasis supplied). Absent even an allegation that RSI intended to confer the benefit of DSI's promise on Plaintiffs, the

---

6. August Retainer Agrmt. at 1.

7. The Complaint uses the proper noun "Houbigant" to refer collectively to both Plaintiffs. *See* Compl. at 1.

third-party beneficiary claim clearly cannot be sustained.[8] Count III will therefore be dismissed.

*Trademark Infringement Claim—Res Judicata Defense*

Plaintiffs' trademark infringement claims (Counts IV–IX) assert that Defendants contributed to and facilitated counterfeiting, infringement, false designation of origin, false description, and unfair competition involving Plaintiffs' licensed marks. (Compl.¶¶ 98, 101, 104, 107, 110, 113.) Plaintiffs specifically allege that, during the period from August 1998 through August 1999, Defendants engaged in acts that facilitated trademark infringement by the Company, certain of their affiliates and third parties. (*Id.*) Defendants seek dismissal of these claims, arguing that Plaintiffs' trademark infringement-related claims are barred by *res judicata* because Plaintiffs already had a full and fair opportunity to litigate those claims in the context of the bankruptcy proceedings involving the Licensees and the Company. (*See* Mem. of Law in Supp. of Defs. To Dismiss Compl. at 15.)

▉▉▉▉▉ Though *res judicata* is usually plead in an answer, a Rule 12(b)(6) dismissal on the basis of the doctrine is appropriate when it is clear, from the complaint and from matters of which the court takes judicial notice, that plaintiff's claims are barred as a matter of law. *Day v. Moscow,* 955 F.2d 807, 811 (2d Cir.1992); *see also, Cowan v. Ernest Codelia, P.C.,* 149 F.Supp.2d 67, 74 (S.D.N.Y.2001); *Strassberg v. New York Hotel & Motel Trades Council, Local 6,* 99 Civ. 10150(KMW), 2001 WL 103427 (S.D.N.Y. Feb. 7, 2001). Indeed, "[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74 (2d Cir.1998). Here, however, there are disputes as to the scope of the claims, settlements and orders issued in the Bankruptcy Court. *Cf. Cowan,* 149 F.Supp.2d at 74 (where state court action's facts are undisputed, *res judicata* defense in a Rule 12 motion can be entertained). Further, the basis of Defendants' *res judicata* defense is not set forth on the face of the pleadings since there is no reference in the Complaint to the bankruptcy claim. The Court declines to exercise its discretion to depart from the general rule that a *res judicata* defense is to be considered only after it is pleaded in a defendant's answer. *See* Fed. R.Civ.P. 8(c); *Day v. Moscow,* 955 F.2d at 811.

Defendant's motion to dismiss Counts IV–IX on *res judicata* grounds is denied as premature.

---

**8.** The foregoing analysis of Plaintiffs' intent allegations should not be read as any indication as to whether or not the instant claim could survive a motion to dismiss were intentions on the part of both contracting parties alleged.

> Houbigant contends that the third-party beneficiary claim should be evaluated under Connecticut, rather than New York, law. It is unnecessary for the Court to resolve this choice of law issue because Connecticut law is not inconsistent with the Restatement standard with respect to such claims. *See Grigerik v. Sharpe,* 247 Conn. 293, 721 A.2d 526, 538–39 (Conn.1998). Indeed, the insufficiency of Plaintiffs' pleading of intended beneficiary status appears to be even clearer under the Connecticut standard. *See id.* at 536 ("both contracting parties must intend to confer enforceable rights in a third party"); *Gateway Co. v. DiNoia,* 232 Conn. 223, 654 A.2d 342, 347 (Conn.1995) ("The intent to confer a benefit is irrelevant to the determination of whether Gateway was a third party beneficiary. We must instead evaluate whether [the contracting parties] intended that DiNoia assume a direct obligation to Gateway.").

*Trade Secret Misappropriation Claim*

Plaintiffs allege that Defendants provided Plaintiffs' confidential information to non-licensed third party manufacturers. (Compl.¶ 79.) Plaintiffs further assert that Defendants provided confidential information to potential acquirers of the Company's assets during due diligence, and then ultimately abandoned the confidential information to purchasers of the Companies' asserts in the course of the bankruptcy proceeding. (*Id.* ¶ 116.) These actions, according to Plaintiffs, constituted misappropriation of their trade secrets and Count X of the Complaint seeks damages on that basis. (*Id.* ¶ 117.) Defendants argue that this claim should be dismissed because Plaintiffs failed to plead that the subject information was secret, and further argue that *res judicata* bars the claim.

 To recover for the misappropriation of a trade secret, Plaintiffs must demonstrate (i) that it possessed a trade secret and (ii) that Defendant used that trade secret in breach of an agreement, a confidential relationship or duty, or as a result of discovery by improper means. *North Atlantic Instruments, Inc. v. Haber*, 188 F.3d 38, 43–44 (2d Cir.1999); *Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.*, 920 F.2d 171, 173 (2d Cir.1990); *Carpetmaster of Latham v. Dupont Flooring Systems*, 12 F.Supp.2d 257, 261 (N.D.N.Y.1998). Under New York law, "a trade secret 'may consist of any formula, pattern, device or compilation of information [that] is used in one's business, and [that] gives [the owner] an opportunity to obtain an advantage over competitors who do not know or use it.'" *Hudson Hotels Corp. v. Choice Hotels Int'l*, 995 F.2d 1173, 1176 (2d Cir.1993) (quoting *Restatement of Torts* § 757 cmt. b (1939)); *see also Delta Filter Corp. v. Morin*, 108 A.D.2d 991, 485 N.Y.S.2d 143, 144 (3d Dept.1985); *Lehman v. Dow Jones & Co.*, 783 F.2d 285, 297 (2d Cir.1986); *Support Sys. Assocs. v. Tavolacci*, 135 A.D.2d 704, 522 N.Y.S.2d 604, 606 (2d Dept.1987).

 Defendants first assert that Plaintiffs are precluded, by assertions in Plaintiffs' Proofs of Claim (filed in the Companies' Delaware bankruptcy proceedings) that certain allegedly improper activities, including the disclosure of trade secret information, occurred as early as April 1997, from proving that the subject information was secret at the time Defendants became involved with the Companies. It is undisputed that DSI was first retained by RCI in August 1998. Even assuming the propriety of taking factual assertions in the Proofs of Claim into account in determining this Rule 12(b)(6) motion, it is apparent that, construed in the light most favorable to Plaintiffs, the statement in the Proofs of Claim is not inconsistent with the notion that the alleged trade secret disclosure took place, at least in part, after DSI was retained. Nothing in the Proofs of Claim or in the Complaint places such disclosure exclusively in the pre-August 1998 period.

Defendants' *res judicata* argument is twofold. They assert that the trade secret claim against Defendants, like the trademark infringement claims, is precluded because it could have been asserted in connection with Plaintiffs' Proofs of Claim in the Companies' Bankruptcy Proceeding. Defendants also argue that orders entered in the Bankruptcy Proceeding, authorizing the disposition of certain of the Companies' assets, establish the propriety of the challenged trade secret disclosures. Plaintiffs argue that the disclosures complained of were outside the scope of any Bankruptcy Court authorization; both parties proffer views of the significance of language in the orders as well as of the significance of positions taken in connection with an appeal. Suffice it to remind the reader that

a complaint is to be dismissed for failure to state a claim only when " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). That cannot be said of Plaintiffs' trade secret disclosure claims.

For these reasons, and for the reasons explained above in connection with Plaintiffs' trademark infringement claims (see *supra* page 221), Defendants' motion is denied with respect to Count X of the Complaint.

### Tortious Interference Claim

Plaintiffs allege that Defendants interfered with the Licensees' performance of their obligations under the Licensing Agreements and induced the Licensees' numerous alleged breaches. (Compl. ¶ 121.) Defendants assert that Plaintiffs' interference allegations fail to state a claim because Defendants were not third parties to the Licensing Agreements between Plaintiffs and the Licensees, and therefore cannot be held liable for tortious interference.

 To establish tortious interference with a contract under New York law, "a plaintiff must allege, among other things, that the defendant intentionally induced a third party to breach a contract. . . . These rules are consistent with the principle that a defendant cannot tortiously interfere with a contract if he is not a 'third part[y] unrelated to the contract.' " *Solow,* 994 F.Supp. at 181 (citing *Burdett Radiology Consultants, P.C. v. Samaritan Hosp.,* 158 A.D.2d 132, 136, 557 N.Y.S.2d 988, 991 (3rd Dep't 1990)); *see also ESI, Inc. v. Coastal Corp.,* 61 F.Supp.2d 35, 70 (S.D.N.Y.1999); *M.J. & K. Co. v. Matthew Bender & Co., Inc.,* 220 A.D.2d 488, 489, 631 N.Y.S.2d 938, 940 (2d Dep't 1995). Further, under New York law, a corporate officer cannot be held individually liable for alleged tortious interference by his or her corporate employer. *World Wide Comm., Inc. v. Rozar,* No. 96 Civ. 1056(MBM), 1997 WL 795750, at *9 (S.D.N.Y. Dec.30, 1997). There is, however, an exception to this rule, for circumstances in which an officer or director, "motivated by malice and acting outside of the scope of [his] corporate representative capacities, induced a breach." *Riddell Sports, Inc. v. Brooks,* 872 F.Supp. 73, 78 (S.D.N.Y.1995); *see American Protein Corp. v. AB Volvo,* 844 F.2d 56, 63 (2d. Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988); *Mobile Data Shred v. United Bank of Switzerland,* No. 99 Civ. 10315(SAS), 2000 WL 351516, at *7 n. 9 (S.D.N.Y. April 5, 2000).

 Here, nothing in the Complaint asserts that Defendants were third parties unrelated to the contract. Indeed, the essence of Plaintiffs' claim is that Defendants were insiders with control and authority over the Licensees, and that defendants Brandt and Tolly were officers and directors of the Licensees. (Compl. ¶ 44, 47, 66.) However, Plaintiffs' Complaint does plead that Defendants were motivated by personal gain and interest "without regard for the interests of the companies or the Licensees' creditors" (*id.* ¶ 42), and that they exacerbated the infringements in order to maximize cash flow for payment of their fees. (*Id.* ¶ 2, 49.) Thus, Plaintiffs have adequately pled a claim for tortious interference.

The motion to dismiss is therefore denied as to Count XI of the Complaint.

### MOTION TO DISMISS BY DEFENDANT MILLER PURSUANT TO RULES 12(B)(1), (2), (3), AND (6), AND IN DEFERENCE TO FOREIGN PENDING ACTION

Plaintiffs' Complaint asserts trademark infringement (Counts VII, IX), misappro-

priation of trade secrets (Count X) and tortious interference (Count XI) claims against defendant Miller, who was Administrator of Dana U.K. Plaintiffs seek to recover on those claims against Miller in his personal capacity. Defendant Miller has moved to dismiss the Complaint as against him pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (3) and (6). Alternatively, he seeks the dismissal with prejudice of those aspects of the Complaint "in deference to a pending foreign action."

Miller asserts that he is not subject to the exercise of personal jurisdiction by this Court for lack of contacts with the New York forum sufficient to support such jurisdiction under the New York long arm statute and/or due process principles under the federal constitution. He also argues that the claims against him should be dismissed in favor of adjudication of the underlying factual assertions in the context of ongoing the Administration proceedings of Dana U.K. in the United Kingdom. Finally, he urges that the Complaint fails to state a claim as against him in his personal capacity because the conduct complained of is insufficient to support the extraterritorial application of the Lanham Act and similarly insufficient to support the application of New York common law.

In support of his motion, Miller has proffered an affidavit in which he asserts the following. Miller is a partner with an English firm of licensed insolvency practitioners. (Miller Aff. at ¶ 1.) On October 12, 1998, Miller was appointed Administrator of Dana U.K. (*Id.* at ¶ 2.) As Administrator of Dana U.K., Defendant was bound by the rules and duties of U.K. law which authorized him to act as agent of Dana U.K. (*Id.* at ¶ 6.) Miller acted upon information and in the belief that RCI, as Dana U.K.'s holding company, was in possession and control of the perfume licenses which Dana U.K. utilized as a U.K. subsidiary of

Dana U.S., also a wholly owned subsidiary of RCI. (*Id.* at ¶ 10.) Miller did not travel to New York as Administrator of Dana U.K. (*Id.* at ¶ 21.) He asserts that his communications with representatives of RCI and DSI took place in London, England or were made telephonically to such representatives at their offices in Chicago, Illinois. (*Id.* at ¶ 22.) Miller argues that he took no actions relevant to this litigation in his personal capacity but at all times acted solely in the statutory capacity of U.K. Administrator of Dana U.K.

*Personal Jurisdiction*

■ The exercise of personal jurisdiction in a manner consistent with the constitutional requirements of due process requires that the defendant have certain "minimum contacts" with forum, such that maintenance of the action in the forum selected by the Plaintiffs does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). "The plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Kernan v. Kurz–Hastings, Inc.,* 175 F.3d 236, 240 (2d Cir.1999). Plaintiffs need only make a *prima facie* demonstration of personal jurisdiction to defeat a pre-discovery motion to dismiss. *Mehrkar v. Schulmann,* 99 Civ. 10974(DC), 2001 WL 79901 (S.D.N.Y. Jan. 30, 2001).

Plaintiffs assert that the Court is authorized to exercise personal jurisdiction over Miller by the following provisions of New York CPLR section 302(a), which permit New York courts to exercise jurisdiction over any "non-domiciliary, or his executor or administrator, who in person or through an agent":

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

 (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

 (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce ...

N.Y.C.P.L.R. § 302 (McKinney 2001). Jurisdiction is "qualitative rather than quantitative," and a single transaction is sufficient to support personal jurisdiction as long as the defendant's activities were purposeful and there is a substantial nexus between the activities and the claim. *See Agency Rent A Car System v. Grand Rent A Car Corp.*, 98 F.3d 25, 31 (2d Cir.1996); *Jerge v. Potter*, No. 99 Civ. 0312E(F), 2000 WL 1160459 (W.D.N.Y. Aug.11, 2000). Court look at "the totality of circumstances" in determining whether a party has "transacted business" under section 302(a)(1), including the following:

(1) whether the defendant has an ongoing contractual relationship with a New York corporation; (2) whether the contract was negotiated or executed in New York; (3) whether the contract contains a New York choice-of-law, forum-selection or consent to jurisdiction clause; and (4) whether the contract requires notices or payments to be sent to New York or requires supervision by the corporation in New York.

*ESI, Inc. v. The Coastal Corp.*, 61 F.Supp.2d 35, 57 (S.D.N.Y.1997). CPLR sections 302(a)(2) and 302(a)(3) premise the exercise of jurisdiction, respectively, on the commission of a tort within New York state or outside New York state where the act causes injury within the state, where certain commercial criteria are met.

Miller asserts that the Complaint fails to present any facts or evidence to demonstrate that Miller falls within the scope of any of the cited subsections of CPLR 302(a), in that any action he took was solely in his capacity as Administrator of Dana U.K. and not in his "personal capacity." Any contacts sufficient to support jurisdiction were therefore, he argues, those of Dana U.K. rather than of Miller personally.

The New York State Court of Appeals has rejected the "fiduciary shield" doctrine as a basis for insulating corporate officers or employees from the exercise of personal jurisdiction over them in connection with claims premised on actions taken in a representative capacity. *See CPC International Inc. v. McKesson Corp.*, 70 N.Y.2d 268, 519 N.Y.S.2d 804, 813–14, 514 N.E.2d 116 (N.Y.1987) (no fiduciary shield from CPLR 302(a)(2) jurisdiction); *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988); *see also Retail Software Services v. Lashlee*, 854 F.2d 18 (2d Cir.1988). Such jurisdiction can be asserted where the acts of the corporation are attributable to the representative on an agency theory. Agency is properly found if the corporate entity "engaged in purposeful activities within this state in relation to [the] transaction for the benefit of and with the knowledge and consent of the [individual] and ... [the individual] exercised some control over [the corporate entity] in the matter." *Kreutter*, 71 N.Y.2d at 467, 527 N.Y.S.2d 195, 522 N.E.2d 40.

■ Here, Plaintiffs allege that Dana U.K. (by virtue of his status as its Administrator) and Miller transacted business in New York by entering into and performing the U.K. Agreement, under which certain assets of Dana U.K. (including assets relating to Houbigant's licensed products) were transferred to non-licensed third parties. Plaintiffs point out that the transaction document called for a closing and payments in New York, and that title passed through a New York entity. Plaintiffs also point out that the agreement includes a clause contemplating consent by Dana U.K. and the Administrator to jurisdiction of New York courts. (Compl. ¶¶ 12, 62; U.K. Agreement at ¶¶ 7.11.1, 7.11.4, Ex. 3 to Miller's Mot. to Dismiss). Plaintiffs assert, and this Court agrees, that these allegations are sufficient to make out a *prima facie* case for personal jurisdiction over Miller pursuant to CPLR 302(a)(1) with respect to claims arising from that transaction. Miller signed the U.K. Agreement and admits in his affidavit that, as Administrator, he controlled Dana U.K.'s activities from the time of his appointment. Miller can also be classified as a "primary actor." *Cf. Karabu Corp. v. Gitner,* 16 F.Supp.2d 319, 325 (S.D.N.Y. 1998) ("suit against officers based only upon their title and without any good faith basis for believing that they personally participated in the conduct underlying [the] lawsuit, will not confer jurisdiction under a theory of agency"). The purposeful activity and control elements of the *Kreutter* test are thus met.

Furthermore, Plaintiffs allege that Miller undertook the allegedly offending activity to increase Dana U.K.'s cash flow and thereby ensure payment of his fees as Administrator. (Compl. ¶¶ 62, 64.) Given the low level of "benefit" relationship recognized by the New York courts in this connection, that element of the New York standard is met as well.

Plaintiffs also charge Miller with tortious activity based on the alleged manufacture and distribution of nonconforming Houbigant trademarked products by or with Dana U.K. during the period for which Miller served as Administrator. (Compl. ¶ 58.) Given his role in Dana U.K.'s activities during that period and under the principles enunciated above, Plaintiffs' allegations are sufficient to meet their burden of putting forward a *prima facie* case under CPLR subsections 302(a)(2) and 302(a)(3) as well. It should be noted in this connection that the analysis of the sufficiency of allegations for personal jurisdiction purposes is entirely separate from any analysis of the substantive validity of the underlying claims. *See Kreutter,* 71 N.Y.2d at 470, 527 N.Y.S.2d 195, 522 N.E.2d 40.

In addition to the CPLR 302 requirements, the Court must also determine whether the exercise of personal jurisdiction over Miller would comport with the due process clause of the Fourteenth Amendment to the Constitution of the United States. *In re Sumitomo Copper Litigation,* 120 F.Supp.2d 328, 342 (S.D.N.Y.2000); *see also Savin v. Ranier,* 898 F.2d 304, 306 (2d Cir.1990); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Supreme Court has held that due process requires that a defendant have minimum contacts with and avail itself of the benefits and protections of the state in order for the court to exercise jurisdiction over it. *International Shoe,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. Thus, the court must determine that "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)

(citations omitted). Due process requires both minimum contacts and reasonableness inquiries. *Metropolitan Life Insurance Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 567 (2d Cir.1996).

Here, Miller's alleged activities in connection with New York state are such that it would be fair and reasonable to require him to defend himself in that state. The Asset Agreement included provisions under which Miller consented, as Dana U.K.'s Administrator, to jurisdiction in New York courts. Plaintiffs have adequately plead that Miller's activities were, at least in part, aimed at New York (Compl.¶ 12); under the circumstances, he should have " 'reasonably anticipate[d] being haled into court there.' " *Calder v. Jones,* 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). Thus, the exercise of personal jurisdiction over defendant Miller would not offend the exercise of due process.

*Deference to Pending Foreign Action*

■ Miller also asserts that this Court should dismiss Plaintiffs' claims against him based on pendency of the London proceeding *In re Dana U.K.,* a liquidation proceeding in the U.K., in which, he says, substantially similar, if not identical, claims have been raised regarding actions taken by Miller as Administrator of Dana U.K. Miller argues that this Court's exercise of jurisdiction over him would be unreasonable, as Plaintiffs have placed identical issues of damages and improper conduct by Miller before the London court.

The Court finds that dismissal of this action on such grounds would be inappropriate. Deference to a foreign action should not be given where "neither the party nor the issues are identical or significantly similar." *Herbstein v. Bruetman,* 743 F.Supp. 184, 188 (S.D.N.Y.1990); *see*

*also Calzaturificio Rangoni v. U.S. Shoe Corp.,* 868 F.Supp. 1414, 1418 (S.D.N.Y. 1994). The London proceeding concerns the assets and liabilities of Dana U.K. Defendant Miller is not a party to that action in his personal capacity and there is no indication that he could be sued in his personal capacity in the London action. Plaintiffs' claims against Miller thus do not duplicate or substantially resemble those in the London proceeding, and Miller's motion to dismiss on this ground is denied.

*Motion to Dismiss Lanham Act Claims Pursuant to Fed.R.Civ.P. 12(b)(6)*

■ Miller further asserts that Plaintiffs' Complaint fails to state a Lanham Act claim against him because he is not subject to the application of the Act. In determining the extraterritorial application of the Lanham Act, this Court considers the so-called *"Vanity Fair* factors," namely: (1) whether the defendant's conduct has a substantial effect on United States commerce; (2) whether the defendant is a United States citizen; and (3) whether there is no conflict with trademark rights established under foreign law. *Vanity Fair Mills v. T. Eaton Co.,* 234 F.2d 633, 642 (2d Cir.1956); *Les Ballets Trockadero de Monte Carlo, Inc. v. Trevino,* 945 F.Supp. 563, 566 (S.D.N.Y.1996). "None of these three criteria is dispositive of the analysis concerning the Lanham Act's extraterritorial effect, and a court must employ a balancing test of all three factors to determine whether the statute is properly implicated." *Warnaco Inc. v. VF Corp.,* 844 F.Supp. 940, 950 (S.D.N.Y.1994). The object of this balancing test is to determine whether the "contacts and interests of the United States are sufficient to support the exercise of extraterritorial jurisdiction." *King v. Allied Vision, Ltd.,* 807 F.Supp. 300, 306–07 (S.D.N.Y.1992) (quoting *American Rice, Inc. v. Arkansas Rice Growers Coop. Ass'n,* 701 F.2d 408, 412 n.

5 (5th Cir.1983)), *aff'd in part and rev'd in part on other grounds,* 976 F.2d 824 (2d Cir.1992).

 The Court finds that the allegations of the Complaint and the integral documents suffice to state a cause of action against Miller in this regard. Plaintiffs allege that Miller has allegedly facilitated the infringement of Plaintiffs' U.S. registered marks and diluted Plaintiff's reputation, thus having a substantial effect on U.S. commerce. The Complaint asserts that Miller utilized the stream of U.S. commerce by distributing counterfeit Houbigant products through the United States to unlicensed third parties throughout the world. (Compl.¶¶ 56, 57.) Though Miller is not a U.S. citizen, he is alleged to have committed infringing acts through Dana U.K., the subsidiary of Dana U.S., an American corporation. *See Calvin Klein Indus., Inc. v. BFK Hong Kong, Ltd.,* 714 F.Supp. 78, 80 (S.D.N.Y.1989); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.,* 51 F.3d 982, 985 (11th Cir.1995) (applying the Lanham Act extraterritorially to non-citizen residents of the United States where co-defendants are U.S. corporations). Thus, Plaintiffs' Complaint pleads sufficiently a Lanham Act claim against defendant Miller. As to Miller's argument that Plaintiffs' claims of misappropriation of trade secrets and tortious interference should be dismissed, as discussed above (*supra* pp. 221–22), Plaintiffs have adequately plead both claims against all defendants in this action.

Accordingly, defendant Miller's motion to dismiss is denied in its entirety.

### CONCLUSION

For the foregoing reasons, the motion of Defendants DSI, Brandt and Tolly to dismiss the Complaint is granted as to Counts I through III and denied as to Counts IV through XI. Defendant Miller's motion to dismiss is denied in its entirety.

A pre-trial conference in this matter shall be held on November 6, 2002 at 5:00 p.m. The parties shall file a revised Joint Preliminary Pre–Trial Statement by October 30, 2002, with a courtesy copy to Chambers.

SO ORDERED.